The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 4-21-0248, People of the State of Illinois v. Jerry Exum. Would counsel for the appellant please introduce yourself, state your name for the record. Good afternoon, your honors. My name is Carl Muntz. I'm with the Office of the State Appellate Defender. I represent Jerry Exum. And Ms. Brooks. Um, good afternoon, your honors. I'm Allison Page Brooks and I'm appearing on behalf of the people. Thank you. You may proceed, Mr. Muntz. Well, thank you. May it please the court, counsel. In this self-defense case, Jerry's credibility was a key question for the jury. But due to a series of mistakes by trial counsel and a couple of decisions by the trial court, evidence that would have supported Jerry's theory of the case and undermine the state's case was never presented to the jury. In this case, where the evidence of self-defense was closely balanced, this denied Jerry a fair trial. In the briefs, we raised several claims of ineffective assistance of counsel. And we stand by those, but, and I'd be happy to discuss any of those. But for purposes of this argument, I would like to focus on the conflict of interest argument and then the issue to the cerebral issue. Counsel, I do have a question now and a couple other areas. First, they are questions, but the trial court determined that defense counsel here, whose name was Deadman, did not possess the photographs of Lester Wells, holding a gun and flashing gang signs, and therefore could not have used them to impeach him and his testimony. Why was that finding against the manifest weight of the evidence? That finding was incorrect because when Mr. Deadman testified at the motion-forming trial, he agreed that he had been given some videos from Mr. Exum's girlfriend. He did say he had not seen the photographs that were at issue in the motion. But he did admit that he got the video. But then Ms. Patton, counsel who came to the post-trial motion, she asserted in her motion and in her questioning of Mr. Deadman, that those images came from those videos. Admittedly, the record is not as clear as I would like it to be on this point. But as an officer of the court, and when she filed a written motion raising this claim, Ms. Patton surely had some reason to believe that these images came from those videos. Her claim was that counsel had these images. She would not have made that claim if she did not have some good faith basis for that claim. And when Mr. Deadman said he had not seen those, he did not claim definitively, I didn't have those. He just said, I haven't seen them. So the record seems to be that Ms. Patton believed he had them, but perhaps didn't realize that he had them. And for that reason, Your Honor, we believe the trial court's ruling on that issue is contrary to the record. Thank you. Go ahead with your other points, counsel. Thank you, Your Honor. In this case, Mr. Deadman operated with an actual conflict of interest. It came to light that counsel had information that was beneficial to his client's case, but he did not present that testimony because he was the attorney on the case. He recognized this problem when he told the court, and I can't testify about the other thing that he lied about. That was counsel's recognition that as the advocate, as the attorney in this case, he could not call himself as a witness. However, he did not say to the court, Your Honor, here's my conflict. This is a conflict of interest. How do we resolve this? Instead, counsel resulted on his own by simply deciding not to present this evidence and to stay on the case as the attorney. We don't know, do we, counsel, what he was referring to when he said testify about the other thing that DeLong lied about. We don't have that information here, do we? We do not know specifically what he would have testified about, but he did make it clear that he believed that the detective was lying and he had information that would have directly rebutted the officer's testimony. Yes, we do not know the exact circumstances of it, unfortunately, because when the trial court asked him to elaborate, Mr. Dedman, this was going on at the same time as the Cerebuttal Witness issue. Mr. Dedman provided an offer of proof of what the Cerebuttal Witness would have testified to and not what he would have testified to, unfortunately. So the court asked him for more information and he did not provide it. And frankly, Your Honor, that's a big part of why we raised this as an effective assistance of counsel, was because counsel had this conflict. He was the only one who had the appropriate information, but he didn't bring it to the court's attention as a conflict and say, Your Honor, I have this conflict, we need to resolve it. And, you know, essentially open it up to the parties and Mr. Exum all sort of decide how to then proceed, given this conflict. We don't know, counsel, that Dedman didn't discuss this with his client off the record and whether the defendant agreed that Dedman should not testify. We don't have that information in this record, do we, that there was an off the record conversation? That's correct. We do not know for sure whether or not this was discussed. However, Your Honor, this is a type of conflict that is not necessarily up to the defendant. It's not one that the defendant alone may choose to weigh. As the state pointed out in its brief, there is an exception to this rule where substantial hardship could apply. So this is a situation where it should have been brought to the court's attention so that everybody could have, you know, each party essentially explain how they believe we should proceed or in that fashion, but counsel didn't do that. But given this situation, isn't this issue much better suited for collateral proceedings, counsel? We don't have enough here. This court does not have enough here to decide this issue, do we? I believe this court does have enough, Your Honor. We have enough to know that counsel had an actual conflict. He made it clear he would testify the detective was lying. Now, do we know the exact testimony he would have provided? No, but that doesn't really bear on whether this was a conflict. We have enough information to know this was an actual conflict. Well, it seems to me we have a vacuum here and that collateral proceedings would give an opportunity to make a record. But anyway, if you want to go ahead and finish your comment. Sure, thank you, Your Honor. It is our position that the record here is sufficient to establish that there was an actual conflict of interest and it impacted Mr. Dedman's choices of the evidence to present. Specifically, when he told the court, I can't testify about this other thing that he how he performed in this case. And that is sufficient to rise to the level of being reversible error in this situation. And regarding the other claims of ineffective assistance of counsel in the briefs, each one of those issues, the evidence at issue, whether it be the photos now presented, the video of Jerry exiting the club not being presented and counsel's failure to object in a timely fashion to the hearsay testimony about the gang evidence. All of that evidence went directly to Jerry's state of mind and the reasonableness of his belief in self-defense, which was the crucial issue in this case for the jury to decide. For those reasons, Your Honor, Your Honors, as discussed in the brief, we believe, even if Your Honors don't believe individually that the errors are sufficient to rise to an effective assistance of counsel, when you look at the cumulative impact of each of these errors, this court cannot be confident that Mr. Exum received a fair trial in this case. Yes, I have other questions. Regarding the questions regarding gang affiliation and the specific argument that the delayed objection with respect to whether Wright had a gang affiliation, while the court sustained the objection when the prosecutor asked along, that is, there was no admonition to the jury at that time, but in the jury instructions, the court did tell the jury to disregard questions and exhibits which were withdrawn or to which objections were sustained. So, do we not have to presume that the jury followed this instruction? We do presume that, Your Honor, but as we discussed in the brief, the court sustained an objection to only one question. So, if the jury followed their instructions, they only disregarded the answer to that one question, but it is our position that the other questions were also objectionable and counsel failed to object to them. Okay, so with respect to that other question, there wasn't an objection to the question and answer Smith's gang affiliation and it's your contention that the defendant was prejudiced by this, correct? Yes. So, essentially, didn't DeLong testify that the Champaign Police Department had no record of Greg Smith being in a gang? That is, in essence, what he testified to, yes. Right, but obviously a person can be in a gang even if the police don't know it, right, or have a record of that. Isn't that correct? Of course, Your Honor. All they know is they don't have information that he's in a gang. They do not have any information he is not in a gang. All right, so the fact that they didn't know Smith was in a gang really proved very little, right? On its own, I agree. That simple fact on its own, yes. However, Jerry's theory of the case was that these were gang members who had threatened him and so in that context, when the state then presents this improper testimony of this authority figure of a police officer saying, no, no, no, these guys aren't in a gang, that has a very big impact on a jury when they're evaluating Jerry's credibility because Jerry says they're in a gang but the police say they're not. That has a big impact on the jury, Your Honor, and we believe it was prejudicial in this case where the evidence regarding self-defense was closely balanced. Well, this was isolated testimony though in this particular situation, correct? On this particular point? On that point, yes, but this rebuttal testimony was elicited specifically to contradict Jerry's testimony that these men were in a gang and had guns and that's why he feared them. So it wasn't, the prosecution didn't ask this question in a vacuum. They had a reason to be asking the detective about the gang database and the gang information and that was to contradict Jerry's testimony on that exact subject. Thank you. If there are no other questions on ineffective assistance of counsel, I'd briefly like to discuss the CIRA rebuttal issue. On rebuttal, when Detective DeLong was testifying, the state used his testimony to impeach Jerry's testimony and under the law that is a new matter which entitled Jerry to respond to that impeachment on rebuttal through a witness in CIRA and that is exactly what he asked to do. Ms. Thomas's testimony, while yes, it did contradict the police officer in part, what it was really meant to do was to rehabilitate Jerry's testimony and it was particularly unfair where the state was permitted to call a witness in rebuttal to impeach Jerry, but then Jerry was not given a chance to respond to that impeachment and then, in particular because the trial court found her testimony to be collateral, but then when counsel asked, well, if the detective's testimony is collateral, we should strike it and the judge said no. So the state is allowed to present collateral matters in impeachment on rebuttal, but the defendant is not allowed to respond in CIRA that's not fair, that denied him a fair trial. But counsel, on that point, the trial court was never asked to admit the testimony on the ground that you're arguing on appeal that it would rebut a charge of recent fabrication, allegedly that the defendant recently fabricated the story with regard to not wanting the police come to his mother's house. The trial court never was presented with that. That's correct. That particular argument was not made below and that is the major reason why we raised this particular issue as a plain error, your honor, as opposed to But if it wasn't raised, how can we say that the trial court abused its discretion or committed clear or obvious error by not allowing the defense to rebut a charge of recent fabrication? Because the trial court stated reason for not allowing the testimony was that it was collateral and that is just flat out incorrect under the law. The definition of collateral is something that could only be admitted to contradict. And as we've established, that's not the case here. It was to be used for rehabilitation. So respectfully, your honor, regardless of the judge's reasoning, if the reason he gave is wrong, your honors can find it to be an abuse of discretion, even if the parties didn't argue a different reason below. The court's reason for excluding it was wrong, regardless of whether counsel argued the correct reason for it coming in. And under plain error, your honors can look and say, the judge was wrong. The reason he didn't let this come in is just not correct. That's plain error when it denies the defendant a substantial right. And in this case, Mr. Exum was denied the chance to present a complete defense by calling this witness in surreptitiously to rehabilitate his testimony because the judge got the law wrong when excluding this testimony. That is plain error. That is reversible error. We ask this court to reverse his conviction for that reason. If your honors have no other questions for the reasons stated in our briefs, we ask you to reverse Jerry Exum's convictions and remand for a new trial. Thank you. Thank you, counsel. We'll hear from you on rebuttal. Ms. Brooks. Thank you, your honors. May it please the court. The main issue on the effective assistance of counsel they're relying on, it seems to be their claim of an actual conflict of interest. Although the state cites the Moore case where it's not ineffective for a counsel to fail to So there is a situation where if surprise information comes up that only the defense attorney is able to rebut, then the defense attorney can make an attempt to claim an exception to the advocate witness rule and attempt to offer to testify, to call himself or herself to testify. And it would be up to the judge then to determine whether that attorney's as an exception to the advocate witness rule. And if the testimony isn't necessary, then the defendant obviously wouldn't be prejudiced by the inability of this attorney to testify on his behalf. So it's not a situation here where there is any conflict of interest, because if the testimony was necessary and that showing could have been made, then the attorney would have been allowed to testify and there would have been no conflict. The only potential issue I think is what they, I'm not sure if they're actually raising it this way, but the statements made by the attorney seemed to indicate that he did not or the attorney did not believe that they could testify because of the advocate witness rule, but not necessarily understanding there is an exception for if it's the prize testimony and is required, you know, is necessary for that attorney to testify to rebut it. Excuse me, counsel, but we don't know that that's not part of the record that discussion and what defense counsel knew or he didn't know, do we? Well, there was no, was there about the rules of professional responsibility? No, there was, you're right, there was no discussion about that, but sort of like, I believe it's sort of like the attorney's comments appear to be that they do not understand that there is an exception to the advocate witness rule, although where it's not that there is a misapprehension of law, the Strickland rule would require that the counsels, the counsel to have acted reasonably in accordance with professional judgment. So in other words, we can't presume the counsel misunderstood the law or misapprehended the law, that's something to have to be affirmatively shown for the record. It's kind of a closer question whether the counsel really knew that, but if to the extent that it needs to be presumed that counsel should have understood there was an exception and perhaps didn't deem it to be necessary and therefore didn't ask to withdraw or to ask to testify or yes. Excuse me, I'm sorry, wouldn't collateral proceedings allow all of that to be developed counsel? Yes, your honor, that's exactly where I was going. So essentially, if the attorney said, I understand that this isn't it just assuming this is what the attorney was thinking. I understand that this information is not going to be necessary to rebut and therefore the counsel is not going to allow me to withdraw. So therefore, I'm not even going to ask to testify. So I mean, if that was the situation, then a reasonable attorney could realize that the advocate witness rule exception does not apply because it was not necessary. And in here where the information is not even really entirely clear what the attorney would have testified to another reason to leave it for collateral proceedings, if there is any possibility of prejudice, if there's no prejudice, then just simply affirm on the basis of lack of prejudice. But but saying that if there is a prejudice, and it's still unable to be determined whether the attorney wasn't effective, then it would go to collateral proceedings for them to make those showing and be able to either get an affidavit or have the the attorney testify. We don't even know again, I had asked opposing counsel is what Deadman meant when he said he would testify about the other thing that Delong lied about. So we don't even have that information. And that's that's true. And as well as what supposedly Delong lies about, if it involves the mothers, and whether it involves a previous shooting, and whether the defendant wanted to talk to the police that his at that home, these are matters that are far afield of whether his use of force at the parking lot of the club is was justified by an actual and imminent threat of death or great bodily harm. So that's the issue that was really necessary. And so I guess to the server model issue as well is, is these matters are very far afield of the issue, which under the Sandoval case, what is the question for the jury? And because he admitted he did the shooting. At that point, the only question the jury was whether he had shot the two at them in self-defense. And that's the only real question. It was before the jury and everything else was collateral. And there was no manifest prejudice. It had a dispute about whether the defendant told the Delong not to come to that particular house, for example. So the other thing is the other impeachment testimony, again, was was pretty far afield of the actual event, which was on video. And the defendant, of course, claims this one thing is like for the plain error issue, and also whether there's any prejudice for the ineffective assistance is the the balance of the evidence. And in here, like there was a gun recovered from the defendant, but no guns recovered from the victims. And then the defendant lies to the police at the night, especially his reason for lying to the police. He claims he was denied representation. But yet the same time he admits that the very first thing he said to police that he is that approached him is that he was at home all night. So therefore, it's it seems like the jury would weigh the credibility of his now claim that self-defense at the trial when he had lied to police and when he fled town and there was no guns recovered from the victims, only from him and that the prosecutor's argument was very strong, which was that only once it becomes obvious that the defendant has no way of denying that he was a shooter, then he claims self-defense. And so at that point, that is all he is left with. And especially with the video where they have to show him on the video, like point out where do you think the gun is that the victim supposedly holding? It's up to the jury then at that point to examine the video and the credibility of the defendant's claims. So all this other things like, for example, about the the guard at the club when they're talking about whether he had entered once or twice, if he had paid his cover charge, he had a wristband, but he wanted to get back in without being submitted to a security search of his person for weapons, for example. Well, the club policy would say, well, you have to go through security check again, whether you paid your cover charge and had a wristband, you still have to go through that. He did not like that. He got mad. He goes outside and then they hear the gunshots. The best, the security guard outside wouldn't have any information about what Tyler testified happened inside with respect to a possible disturbance that the defendant made. Isn't that correct? Well, I'm not sure if that so. So, yes, how could how could defense counsel have been ineffective for failure to impeach Tyler with best under those facts and circumstances? Well, the deal is, I think, what is the defendant was trying to testify after trial that he had only attempted to make one entry to the club, but the judge don't believe that that there was, in fact, two entries that he gets in. He stays for a while. He leaves. He wants to come back in. And it's only at the point where the best would have seen him not able to get back in the second time, which would not have impeached at all the testimony of Tyler with respect to the defendant coming and going from the first time. So so I think there's a dispute there as to what actually happened, whether it's one or two entries. And again, a lot of that could be left for collateral proceedings to be resolved as well. But again, what happens inside the club is not related necessarily to what happens outside the club. So the immediate surrounding circumstances of the shooting is is disconnected from what happens in another location at a different time. And the questions as to whether they can impeach like the photos of guns and gang affiliation and somebody else named Gregory Smith that has to do with the previous shooting incident. Again, it has to do with the testimony of one of the victims that denied that he owned a gun or that he had a gang affiliation. But yet a picture that shows him making gang signs or having a gun on a different day doesn't prove that he had a gun that night. And that was on a video. So that's up to the jury to examine the video and determine whether the defendant's testimony that he thought he saw the gun in the victim's hand was credible. And that's really what the case comes down to. And why why exactly was the defendant not prejudiced by Deadman's delayed hearsay objection? OK, this has to do with the gang affiliation police records. OK, well, my understanding was from reading the record that. I could find that part of that. Let's see. OK, so part of the I think what he wanted to testify to was sustained. And with regard to others, the first witness, correct, that it was asked about. Yes, it's right. OK, and Smith, who wasn't one of the victims, he said the law indicated he did check. This was a reading from a brief whether or not there were any contacts between Gregory Smith and Devante Wright, who was the other victim. But the law never told the jury what the result of that check was. So we don't even really have the information that would have been objectionable in my reading the record. And so I don't understand. Will you explain what you mean? I'm sorry. OK, well, he was asked if they if he checked, he did check. But then he never said what the check result of the check was. So if you never answered that question, then there's. Well, I'm a little confused. I thought the question was, does Gregory Smith have any gang affiliation? No. And then the follow up question was, does Devante Wright have any gang affiliation? No. And then there was the objection. Is it what we're testing? Isn't that what we're talking about here? Well, that's your other question. OK, well, I was confused just because the other information I was talking about that that they thought was objectionable was whether there was context between Gregory Smith and the other victim, Devante Wright, which in my reading, the record was never actually answered. So therefore, the information that would have been subject to a hearsay objection was never even elicited. The only thing that came out was that there was a check made by DeLong, but he never said what the check revealed. The other things, what was the other questions about? The other evidence was DeLong checked about for police records of what? I'm sorry. Well, my question was. The question was posed, does Gregory Smith have any gang affiliation? And the answer was no. And I think the objection, there was no objection to that, but the argument is that was objectionable and that I think Justice Zinoff, if I were said, she's asking why wasn't that prejudicial to defend? Thank you for clarifying. Yes, thank you. Thank you, Your Honors. I appreciate that. OK, my understanding is that even if it were objectionable, there would be no prejudice just because Gregory Smith is not one of the victims. So this connection to another shooting of the incident is just that's not a justification for him to shoot these at these other two men at a different time. So the results of any check of gang databases for Gregory Smith wouldn't seem to impact the case in terms of the question, which the jury needs to determine, which is was the defendant justified in shooting? And that requires an imminent threat of death or great bodily harm from the men he was shooting at. So Gregory Smith didn't really have as much to do with the case as the defense, I think, was trying to show. Well, but the defendant's theory of self-defense included the source of Wells and Wright's animus. I mean, they were in the parking lot and the defendant was fearful of them. The source of their animus toward him was their belief that he intended to cooperate with the police in connection with the Smith case, the Smith shooting of him at another time. And so that's why the defense, I believe, argued that Wells, Wright, and Smith were members of the same gang, the Gangster Disciples. So that is all tied together, is it not? And so it does become relevant. Under the defendant's theory, yes, if he presents any sort of other evidence to show that there was, in fact, such connections, but when he claims that the evidence of self-defense was closely balanced, all he has is his own words that he believes there were these connections. So I don't remember that being ever independently established. So he'd have to show prejudice by the testimony that he says is objectionable. But yet he doesn't offer anything other than his own words to try to offer this up as sort justification for having shot when it became obvious to him that he couldn't avoid the culpability of this by saying he told the police falsely that he was at home all night when they eventually find the gun, for example, and he flees town. At those situations is what the jury is going to look at, not the question of whether he's trying to tie this together to some sort of previous incident, especially when there's no gun recovered from the victims that's shooting here. So I believe that it's going to be very, very difficult for the defendant to make to showing the requisite prejudice that there is a reasonable probability that he would have been acquitted on the ground of self-defense, even if the attorney had objected or done these other things that he's complaining about. So that's essentially the state's position on that issue. And I'd entertain any other questions. Otherwise, I would just request this court to affirm the conviction. I see no other questions. Thank you. No further questions. Thank you, Your Honors. Thank you. Well, now we'll hear from you, Mr. Mon on rebuttal. Your Honor, I just have a couple of brief points. With regard to the conflict of interest issue, I would just like to remind this court that counsel was the only one who possessed the information that established the conflict, and he didn't bring that forward. He did not come to the court and say, I have a conflict. Help me resolve it. It was incumbent on counsel to reveal this conflict to the court. He chose not to. That deprived Jerry Exum of a fair trial. Now, Your Honors and the state engaged in a long discussion about whether each of these pieces of evidence may or may not have been prejudicial to Jerry. And with all due respect to this court and to counsel, the way it was talked about, I believe, was not correct. At one point, someone said that the photos of the men holding guns or flashing gang signs doesn't prove they weren't a gang, or the video of Jerry leaving the club that was at issue in the motion-free trial doesn't prove that Ms. Tyler's testimony was incorrect. Jerry doesn't have to prove any of these things, not the individual facts. Each of these pieces of evidence arguably supports Jerry's theory of defense. The weight given to each of these would be up to the jury. The problem here is the jury wasn't given the opportunity to decide how to weigh these pieces of evidence. And it is for that reason that we believe counsel was ineffective and that counsel's ineffectiveness prejudiced Jerry Exum in this case. Because there was evidence that should have been presented to the jury that was relevant to the issues at hand. And if we go through each of them, as Your Honors discussed, a big part of Jerry's theory was that these men were in a gang and they had an issue with him. And the photos and the hearsay evidence both went to that question of whether they were gang members. The video of him leaving the club, the state's theory was that he was so hot and angry when he left this club that he went out in the parking lot and shot this guy. The video shows him walking away. He's not angry. He's not upset. Nobody follows him. There's no commotion. He just leaves. And for these reasons, Your Honor, we believe all of these things taken together denied Mr. Exum a fair trial. And for these reasons, we ask Your Honors to reverse his convictions and remand for new trial. Thank you. Thank you, counsel. Thank you for your arguments. We'll take this matter under advisement.